34. Due to the public's connection between Jett, Joan Jett and the Blackhearts, Blackheart, and the Blackheart Family of Marks, Blackheart is continually approached with licensing opportunities for the term "Blackheart." Lucky Brand, Junk Food Clothing, Worn Free, Trunk Limited, Hysteric Glamour and others have contracted with Blackheart Records to produce and distribute apparel, accessories, and jewelry featuring the Blackheart Family of Marks.

35. The aforementioned apparel, accessories, and jewelry, use the design and word elements present in the Blackheart Family of Marks, such as the example below:



36. When Lucky Brand created charm bracelets using the Blackheart Family of Marks, the bracelets included charms with Jett's picture, a black heart charm, and a charm etched with "Blackhearts," such as the examples below:

 

13

### Hot Topic's Purchases and Business Discussions with Blackheart

37. Upon information and belief, Hot Topic has been involved in the retail business since the 1990s.

38. Upon information and belief, one of Hot Topic's main businesses has been retail sales of music and music related apparel, such as concert tee shirts.

39. From time to time throughout the 1990s, Hot Topic distributed music and music related apparel that it purchased from Blackheart and/or Blackheart's business partners.  These products included certain of Blackheart's Joan Jett and the Blackhearts albums shown above.  These products also included clothing, such as concert and band tee shirts, which had the Joan Jett and the Blackhearts name and the Blackheart Family of Marks.

40. On or around January 2010, Hot Topic contracted with one of Blackheart's licensees, Junk Food Clothing, to sell a version of the vintage tee shirt featured below:



41. On or around February 2010, Hot Topic approached Blackheart to design and distribute merchandise featuring the Blackheart Family of Marks.

42. Hot Topic subsequently contracted with Lagunatic Music & Filmworks, Inc. ("Lagunatic"), a licensee of Blackheart also owned by Jett and Laguna, for the production and distribution of Blackheart merchandise, including three orders of Blackheart's tee shirts.

43. Notably, when deciding on which of the Blackheart Family of Marks to use for this merchandise, a representative of Hot Topic wrote, "Exclusivity is so important to us and our business, so we have to make sure that we are only placing things that we can have true ownership on." Hot Topic knew of the images proposed by Blackheart on a tee shirt in Urban Outfitters and wanted to differentiate its Jett-inspired apparel from the competition.

44. As of April 2013, Hot Topic continued to feature at least two Jett-inspired tee shirts on their website:





45. Upon information and belief, Hot Topic previously sold tee shirts that appeared as follows:



46. Likewise, Hot Topic still advertises (out of stock) vinyl copies of the Greatest Hits of Joan Jett and the Blackhearts, which features the Blackheart Family of Marks:





**Defendants' Infringement**

47. After experimenting with legitimate and illegitimate items that use and/or are sold under the Blackheart Family of Marks, Defendants commenced their own line of clothing under their own new "Blackheart" brand (the "Infringing Brand"). Hot Topic did that while

17

48. Upon information and belief, Defendants' actions were geared towards trading off on the substantial goodwill associated with Blackheart, using the tag-line "Lingerie for Girls Who Rock & Roll." Thus, not only do Defendants utilize the "Blackheart" name in the Infringing Brand, they do so while invoking the image and persona of Joan Jett, who, as stated above, is referred to as "The Queen of Rock N' Roll" and whose best known recording is "I Love Rock N' Roll."

49. Upon information and belief, Defendants continue to advertise the Infringing Brand in connection with clothing featuring musicians—the same way Blackheart does. Upon information and belief, Defendants have used internet advertisements similar to the one below:



50. The Defendants knew of Blackheart Records' ownership of the Blackheart Family of Marks based on their prior business dealings with Blackheart.

51. Upon information and belief, Defendants intentionally named, designed and promoted the Infringing Brand to trade off on the goodwill established by Blackheart in connection with the Blackheart Family of Marks and Jett's iconic female rock star image.

18

**Confusion Created by the Infringing Brand**

52.     Even before the Infringing Brand was officially launched, the public confused the Infringing Brand as being associated with and/or sponsored by Jett and the Blackheart Family of Marks.

53.     On November 3, 2012, the website "ohnotheydidn't.com" featured an article on the soon-to-launch Infringing Brand.  One of the website's registered users commented: "When I read 'Blackheart,' I got excited for a Joan Jett and the Blackhearts."

54.     Blackheart's existing and potential customers know that Blackheart uses the Blackheart Family of Marks in connection with clothing and accessories.

55.     Various individuals have contacted Blackheart to ask whether Blackheart and/or Jett is affiliated with and/or sponsoring the Infringing Brand.

56.     Upon information and belief, members of the public are likely to be confused that the Infringing Brand is associated with, and/or sponsored by Blackheart.

57.     The public and professional confusion between Blackheart's Family of Marks and the Infringing Brand was foreseeable and is understandable.  Both use the same name: "Blackheart." Both associate the same logo with their name: a black heart.  Both sell merchandise, including clothing, jewelry, and accessories featuring the formative "Blackheart" and the black heart logo. Both are associated with music—and rock n' roll in particular—as well as a female rocker image.  Jett is the "Queen of Rock n' Roll," and the Infringing Brand is marketed to "Girls who Rock & Roll," targeting the youth market.

58.     Defendants promote and sell the goods in connection with the Infringing Brand to customers familiar with, and that are actual purchasers of, the goods and services sold and promoted by Blackheart in connection with the Blackheart Family of Marks.

19

## COUNT I

### Federal Trademark Infringement

59.     To the extent applicable, Blackheart incorporates the allegations hereinabove as though fully set forth herein.

60.     Defendants' offer to sell, sale, distribution, and advertisement of products under the Infringing Brand violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

61.     The Blackheart Registered Marks are federally registered, and are entitled to protection under both federal and common law.

62.     Defendants' unauthorized use of the Infringing Brand is likely to cause confusion, to cause mistake, and to deceive customers and potential customers as to the source or origin of Defendants' goods, and to cause them to mistakenly believe that Defendants' goods are Blackheart's goods, or are otherwise affiliated, connected, or associated with Blackheart in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

63.     Defendants' unauthorized use of the Infringing Brand has caused, and unless enjoined, will continue to cause substantial and irreparable harm to Blackheart, including without limitation, substantial and irreparable harm to the goodwill and reputation associated with the Blackheart Registered Marks.

64.     Upon information and belief, Defendants' infringement of the Blackheart Registered Marks is willful and reflects Defendants' intent to trade on the goodwill and strong brand recognition associated with the Blackheart Registered Marks.

65.     Blackheart is entitled to injunctive relief, and also entitled to recover its costs, reasonable attorneys' fees, and Defendants' profits under 15 U.S.C. §§ 1114, 1116, 1117.

## COUNT II

### False Designation of Origin and Unfair Competition

66. To the extent applicable, Blackheart incorporates the allegations hereinabove as though fully set forth herein.

67. Defendants' offer to sell, sale, distribution, and advertisement of goods under the Infringing Brand constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

68. The Blackheart Family of Marks, including the Blackheart Registered Marks, are entitled to protection under both federal and common law.

69. Defendants' unauthorized use of the Infringing Brand constitutes unfair competition and the use of a false designation of origin that is likely to cause confusion and deceive consumers as to the impression that Defendants' products are manufactured by, authorized by, or otherwise associated or affiliated with Blackheart in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70. Defendants' unauthorized use of the Blackheart Family of Marks has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Blackheart, including without limitation, substantial and irreparable injury to the goodwill and reputation associated with the Blackheart Family of Marks.

71. Upon information and belief, Defendants' conduct complained of herein is willful and reflects Defendants' intent to trade on the goodwill and strong brand recognition associated with the Blackheart Family of Marks.

## COUNT III

### Violation of New York General Business Law Article 24 § 360

72. To the extent applicable, Blackheart incorporates the allegations hereinabove as though fully set forth herein.

73. Without Blackheart's authorization or consent, and having knowledge of Blackheart's well-known, prior rights in the Blackheart Family of Marks, Defendants manufactured, distributed, promoted, offered for sale and sold to the public goods under the Infringing Brand.

74. Defendants' unauthorized offer to sell, sale, distribution, and advertisement of goods bearing the Blackheart name violates Section 360-L of the New York General Business Law.

75. The Blackheart Family of Marks is entitled to protection under both federal and New York common law.

76. Defendants' unauthorized use of the Infringing Brand is likely to confuse and deceive consumers as to Blackheart's sponsorship or approval of Defendants' goods by creating the false and misleading impression that the Infringing Brand is authorized, licensed or otherwise associated with Blackheart.

77. Defendants' unauthorized use of the Blackheart Family of Marks, unless enjoined, will cause substantial and irreparable injury to Blackheart for which Blackheart has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation associated with the Blackheart Family of Marks.

78. Defendants' unauthorized use of the Infringing Brand has diluted and damaged the distinctiveness of Blackheart's famous Family of Marks and has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Blackheart for which it has no

adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation associated with the Blackheart Family of Marks.

## COUNT IV

### Trademark Infringement in Violation of New York Common Law

79. To the extent applicable, Blackheart incorporates the allegations hereinabove as though fully set forth herein.

80. Defendants' offer to sell, sale, distribution, and advertisement of goods under the Infringing Brand constitutes common law trademark infringement.

81. The Blackheart Family of Marks includes federally registered trademarks as well as unregistered marks, and is used in New York and elsewhere extensively, and is entitled to protection under both federal law and New York common law.

82. Defendants' unauthorized use of the Infringing Brand is likely to cause confusion and deceive consumers as to the origin, sponsorship, or approval of Defendants' products by creating the false and misleading impression that Defendants' products are manufactured by, authorized by, or otherwise associated with Blackheart.

83. Defendants' unauthorized use of the Infringing Brand has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Blackheart for which it has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation associated with the Blackheart Family of Marks.

84. Upon information and belief, Defendants' infringement of the Blackheart Family of Marks is willful and reflects Defendants' intent to trade on the goodwill and strong brand recognition associated with the Blackheart Family of Marks.

85. Upon information and belief, Defendants' infringement of the Blackheart Family of Marks has been deliberate and calculated, having previously distributed, advertised, and promoted Blackheart's products and unauthorized versions of Blackheart's products, resulting in confusion and deception among consumers as to the origin, sponsorship, or approval of Defendants' products, and resulting in damage to Blackheart.

86. Defendants' acts constitute trademark infringement in violation of the common law of the State of New York.

## COUNT V

### Unfair Competition in Violation of New York Common Law

87. To the extent applicable, Blackheart incorporates the allegations hereinabove as though fully set forth herein.

88. With knowledge of the fame and distinctiveness of the Blackheart Family of Marks, Defendants intended to and did trade on the goodwill and strong brand recognition associated with the Blackheart Family of Marks by manufacturing, distributing, promoting and selling products using the Blackheart name under the Infringing Brand.

89. Defendants' acts as alleged herein are likely to cause confusion, mistake, and deception to consumers as to the affiliation, connection, or association of Defendants with Blackheart, and as to the origin, sponsorship, or approval of Defendants' products under the Infringing Brand, all to the detriment and damage of Blackheart and to the unjust enrichment of Defendants.

90. Defendants' unauthorized use of the Infringing Brand, unless enjoined, will cause substantial and irreparable injury to Blackheart for which it has no adequate remedy at law,

including at least substantial and irreparable injury to the goodwill and reputation associated with the Blackheart Family of Marks.

## PRAYER FOR RELIEF

**WHEREFORE**, Blackheart prays for relief, and respectfully request that the Court:

a) enjoin Defendants, their agents, servants, employees, and affiliates from engaging in trademark infringement, dilution, and passing off in each state in which the Defendants do business;

b) require Defendants, their agents, servants, employees, affiliates, licensees, and assignees to account for all sums collected because of manufacturing, distributing, selling and/or otherwise exploiting the trademarks at issue herein;

c) require the cancellation of the registration of infringing trademarks at issue herein;

d) award Plaintiff punitive damages for the conduct complained of herein;

e) award Plaintiff their attorneys' fees, taxable costs and disbursements of this action, under 15 U.S.C. § 1117 and Section 35 of the Lanham Act, in light of Defendants' willful conduct; and

f) award Plaintiff any further relief as justice may require, or as this Court deems necessary.

## DEMAND FOR JURY TRIAL

Plaintiff Blackheart Records Group, Inc., requests a jury trial for all claims.

Respectfully submitted,

**BAKER HOSTETLER, LLP**

**Dated:** June 12, 2013
New York, New York

By: _____
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Donna A. Tobin
Email: dtobin@bakerlaw.com
Jessie A. Kuhn
Email: jkuhn@bakerlaw.com
45 Rockefeller Plaza
New York, New York  10111
Telephone: (212) 589-4624
Facsimile: (212) 589-4201

*Attorneys for Plaintiff*

26